Filed 8/10/26  In re M.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>M.R.,<br><br>        Defendant and Appellant. | F089235<br><br>(Super. Ct. No. F22905367)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and William C. Moine, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In 2023, appellant M.R. was convicted in criminal court of crimes he committed in early 2016 at the age of 17. Prior to sentencing, the prosecutor filed a second motion to transfer M.R. from juvenile court to criminal court following ameliorative changes in the law effected by Assembly Bill No. 2361 (2021–2022 Reg. Sess.) (Assembly Bill 2361) (eff. Jan. 1, 2023). The superior court, sitting as the juvenile court, held another retrospective transfer hearing and again granted the prosecution's motion to transfer M.R. to criminal court. (Welf. & Ins. Code, § 707, subd. (a).)[1]

M.R. timely appealed. He challenges the sufficiency of the evidence supporting the juvenile court's findings and ultimate ruling under section 707, subdivision (a)(3). He also claims the court abused its discretion when it relied on his school records to find a history of delinquency (*id.*, subd. (a)(3)(C)), and when it found "by clear and convincing evidence that [he] is not amenable to rehabilitation while under the jurisdiction of the juvenile court" (*id.*, subd. (a)(3)). M.R. requests this court vacate the order transferring him to criminal court and enter an order denying prosecution's transfer motion.

As discussed herein, we conclude that the juvenile court erred when it found all five statutory criteria weigh in favor of transferring M.R. to criminal court (§ 707, subd. (a)(3)(A)–(E)), and when it found M.R. not amenable to rehabilitation (*id.*, subd. (a)(3)). We reject M.R.'s claim that the juvenile court erred in relying on his school records to find a history of delinquent behavior (*D.C. v. Superior Court* (2021) 71 Cal.App.5th 441, 455 (*D.C.*)), and we conclude that substantial evidence supports the court's findings that the degree of criminal sophistication exhibited by M.R., his previous delinquent history, and the circumstances and gravity of the offense all weigh in favor of transfer. (§ 707, subd. (a)(3)(A), (C), (E).) However, with respect to whether M.R. can be rehabilitated within the two-year period the juvenile court may exercise jurisdiction

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

over him given his age and the success of previous attempts by the juvenile court to rehabilitate M.R., the prosecution failed to meet its burden of proving these criteria favor transfer to criminal court and, therefore, there is insufficient evidence to support the juvenile court's findings in the prosecution's favor on these issues. (*Id.*, subd. (a)(3)(B), (D).) Although "[t]he weight to be given each of the five criteria is within the juvenile court's discretion" (*In re O.F.* (2026) 119 Cal.App.5th 133, 159 (*O.F.*)), and "the court has the discretion to conclude that one or more of the five [criteria] predominate so as to determine the result, even though some or all of the other [criteria] might point to a different result" (*In re E.P.* (2023) 89 Cal.App.5th 409, 417 (*E.P.*)), the juvenile court's ultimate finding that M.R. is not amenable to rehabilitation is also unsupported by substantial evidence. (§ 707, subd. (a)(3).)

These errors require we vacate the juvenile court's order granting the prosecution's transfer motion, but we disagree that M.R. is entitled to entry of an order denying the motion at this juncture. While there may be cases where the record supports denial of the transfer motion as the appropriate remedy, this is not such a case. Where, as here, the juvenile court has abused its discretion in evaluating the evidence and applying the operative legal standards, it is appropriate to remand the matter so the court may reconsider the evidence and its ultimate determination "'through the lens of amenability to rehabilitation .…'" (*O.F., supra*, 119 Cal.App.5th at p. 162, quoting *In re S.S.* (2023) 89 Cal.App.5th 1277, 1288 (*S.S.*); see *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714–715 (*J.N.*) ["'exercises of discretion must be guided by applicable legal principles'"].) Accordingly, we vacate the juvenile court's order granting the prosecution's motion to transfer M.R. to criminal court, and we remand for further proceedings consistent with this opinion, to include an updated transfer report that comports with section 707 and any relevant posttransfer hearing evidence. (*Id.*, subd. (a)(1), (3).)

**FACTUAL AND PROCEDURAL SUMMARY**

**I.      Kidnapping and Sexual Assault of E.G.[2]**

Between 2014 and 2016, M.R.'s mother, Sandra Garcia, and J.G., a divorced father of two daughters, were in a romantic relationship. In early 2015, Garcia and her two younger sons, E.M. and Jo.G., moved into J.G.'s house. Garcia's two older sons, M.R. and Brandon Roque, lived elsewhere. In the summer of 2015, in advance of the upcoming school year, J.G.'s two daughters, K.G. and E.G., returned to the United States from Sweden, where they had been living with their mother.

Tensions developed in the household between J.G.'s daughters and Garcia and her family. In January 2016, after his daughters made the decision to stay in the United States, J.G. asked Garcia to move out. Garcia agreed but thereafter hatched a plan intended to scare J.G.'s daughters badly enough to cause them to move back to Sweden. In February 2016, when J.G. was out of town for business, the plan was put into action.

Eleven-year-old K.G. did not feel well that day and stayed home from school. Garcia made K.G. go with her to a doctor's appointment she had scheduled for the afternoon. As a result, neither Garcia nor K.G. was home when 13-year-old E.G. arrived after school. That morning, E.G.'s cell phone had disappeared from the counter where she left it, forcing her to leave for school without it, which concerned her. When she arrived home from school that day, she tried to enter the house through the garage but her key did not work in the lock so she went around to the front door.

Four males wearing black clothing and masks came up behind her, put tape over her eyes and mouth, tied her arms behind her back with a rope, and shoved her into a car trunk. E.G. recognized M.R.'s voice but initially thought he and Roque were playing a

_____

**2**      This case involves a postconviction transfer hearing and the summary of facts underlying the crimes is based on evidence presented at trial. In the juvenile court, M.R.'s counsel argued that it was improper for the court to consider the trial evidence. Appellate counsel does not advance that argument and concedes the facts are not in dispute. (*O.F., supra*, 119 Cal.App.5th at p. 169 [juvenile court not permitted to assume *unproven* facts].)

4.

prank on her. E.G. was transported into the mountains, taken to an area out of view from the road, tied her to a tree, and stripped of her clothing. One of the males then repeatedly shoved the handle of a plunger into her vagina. After E.G. vomited during the sexual assault, she was punched in the face several times.

Throughout the ordeal, the males threatened to shoot her if she screamed and told her not to tell her father or the police. Before leaving her tied to the tree, they also said they knew her father was on a business trip and her mother was in Sweden, information which not many people knew. After waiting a few minutes to make sure her attackers were not coming back, E.G. freed herself, put on her pants and shirt, and made her way to the nearby road. She saw a couple outside a house and sought help from them, at which point law enforcement became involved.

## II. Arrest, Complaint, and First Transfer Hearing

M.R., Garcia, and Garcia's cousin, Miguel Carriedo, were initially arrested in connection with the crimes committed against E.G. approximately one week later.[3] The prosecution proceeded against M.R., who was only days shy of turning 18 at the time of the crimes, by complaint directly filed in criminal court.[4] (§ 602, former subd. (b).) In June 2018, in light of the passage of Proposition 57[5] in November 2016, the juvenile court held a retrospective transfer hearing and ordered M.R. transferred to criminal court. (§ 707, former subd. (a)(1).)

---

[3] At M.R.'s and Garcia's subsequent trial, Carriedo testified he and M.R. were present for E.G.'s kidnapping and he was the driver. He did not know the other two who were present, but he described them as high school age friends of Garcia's sons and testified that one of them had the first name of Kahlid or Kahlil.

[4] Fresno Superior Court case No. F16903935.

[5] Proposition 57, as approved by voters, General Election (Nov. 8, 2016).

## III. Grand Jury Indictment and Trial

In August 2022, Roque was arrested, and M.R., Garcia, Carriedo, and Roque were subsequently indicted by a grand jury on charges of conspiracy to commit kidnapping, sexual penetration by force, kidnapping a victim under the age of 14 with multiple special circumstance allegations under the One Strike law,[6] torture, and dissuading a witness by force or threat.[7]  (Pen. Code, §§ 182, subd. (a)(1)/207, subd. (a) [count 1]; 289, subd. (a)(1)(B) [count 2]; 207, subd. (a)/208, subd. (b) [count 3]; 206 [count 4]; 136.1, subd. (c)(1) [count 5].)  Prior to jury trial, Carriedo pleaded guilty to conspiracy to commit kidnapping and torture, in exchange for testifying at trial and a sentence of eight years for kidnapping and seven years to life for torture.  Shortly thereafter, Roque pleaded no contest to an amended charge of conspiracy to commit torture, in exchange for a sentence of seven years to life and a waiver of his appellate rights.

In September 2023, jury trial commenced, and in October 2023, the jury convicted M.R. and Garcia as charged and found the One Strike law allegations true.

## IV. Second Transfer Hearing

In December 2023, subsequent to the enactment of Assembly Bill 2361, the prosecution filed a second motion seeking to transfer M.R. from juvenile court to criminal court.

In March 2024, M.R. opposed the motion solely on procedural grounds, as follows.  In 2022, after M.R. was indicted on charges by the grand jury, he filed a demurrer.  (Pen. Code, § 1004, former subd. (1) [renumbered to subd. (a), eff. Jan. 1, 2024].)  He argued lack of jurisdiction based on his age at the time of the crimes and he sought remand of the matter to the juvenile court.  The demurrer was overruled by the Honorable Samuel Dalesandro on the ground that M.R. already had a transfer hearing and

---

**6**     Penal Code section 667.61; *People v. Williams* (2024) 17 Cal.5th 99, 110.

**7**     Fresno Superior Court case No. F22905367.

the allegations in the indictment were substantially similar to those alleged in the criminal complaint.  Based on this prior proceeding, M.R. argued in 2024 that the court lacked jurisdiction to overrule Judge Dalesandro's decision and that he was entitled to appellate review of that matter.

In November 2024, M.R. filed motions in limine, in which he objected to another transfer hearing that late in the proceeding after he had "'aged out'" of the juvenile system.  He also argued his entitlement to consideration of the five statutory criteria under a clear and convincing evidence standard, and to immediate appeal if the juvenile court ordered his transfer to criminal court.

The juvenile court held the second transfer hearing in November 2024.  The prosecution called four correctional officers to testify at the hearing.  M.R. did not put on any evidence.  The juvenile court took the matter under submission and in January 2025, the court granted the prosecution's transfer motion.

M.R. filed the instant appeal.

## DISCUSSION

### I.    Legal Principles

#### A.    Section 707

"When a minor age 16 or older is alleged to have committed a felony, the prosecution may move to transfer the minor to criminal court.  (§ 707, subd. (a)(1).)  Upon the motion, the juvenile court must order the probation officer to submit a report on the minor's 'behavioral patterns and social history.'  (*Ibid.*)  The parties may submit 'other relevant evidence' in connection with the transfer motion.  (*Id.*, subd. (a)(3).)

"In determining whether to transfer a minor to criminal court, the juvenile court 'shall consider the criteria specified in subparagraphs (A) to (E)' of section 707, subdivision (a)(3).  (§ 707, subd. (a)(3).)  These criteria are:  (1) '[t]he degree of criminal sophistication by the minor'; (2) '[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction'; (3) '[t]he minor's previous delinquent

7.

history'; (4) the '[s]uccess of previous attempts by the juvenile court to rehabilitate the minor'; and (5) '[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor.' (§ 707, subd. (a)(3)(A)(1)–(5).)" (*O.F., supra*, 119 Cal.App.5th at pp. 158–159; accord, *In re Miguel R.* (2024) 100 Cal.App.5th 152, 164 (*Miguel R.*).)

"Section 707 also sets forth a nonexhaustive list of 'factor[s]' relevant to each of the five criteria. For the first criterion (criminal sophistication)[,] the relevant factors include 'the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication.' (§ 707, subd. (a)(3)(A)(ii).) For the second criterion (whether minor can be rehabilitated prior to expiration of jurisdiction), the relevant factors include 'the minor's potential to grow and mature.' (*Id.*, subd. (a)(3)(B)(ii).) For the third criterion (previous delinquency history), the factors include 'the seriousness of the minor's previous delinquent history and the effect of the minor's family and community environment and childhood trauma on the minor's previous delinquent behavior.' (*Id.*, subd. (a)(3)(C)(ii).) For the fourth criterion (success of previous court attempts at rehabilitation), the relevant factors include 'the adequacy of the services previously provided to address the minor's needs.' (*Id.*, subd. (a)(3)(D)(ii).) For the fifth criterion (circumstances and gravity of alleged offense), the relevant factors include 'the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused

by the person, and the person's mental and emotional development.' (*Id.*, subd. (a)(3)(E)(ii).)" (*O.F., supra*, 119 Cal.App.5th at p. 159.)[8]

As amended by Assembly Bill 2361, section 707 now provides that "'[i]n order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.' (§ 707, subd. (a)(3), as amended by Stats. 2022, ch. 330, § 1.) 'This changed the finding a juvenile court must make before ordering a transfer in two ways: (1) raising the standard of proof; and (2) requiring a new specific finding regarding amenability to rehabilitation.' (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1284 (*S.S.*).) Assembly Bill 2361 also amended section 707 to require the court to 'recite the basis for its decision in an order' that includes 'the reasons supporting the court's finding that the minor [is] not amenable to rehabilitation while under the jurisdiction of the juvenile court.' (§ 707, subd. (a)(3), as amended by Stats. 2022, ch. 330, § 1.)

"[California Rules of Court, r]ule 5.770 was amended, effective September 1, 2023, to comport with these changes. It provides in relevant part: 'Following receipt of the probation officer's report and any other relevant evidence, the court may order that the youth be transferred to the jurisdiction of the criminal court if the court finds *by clear and convincing evidence each of the following*: (1) The youth was 16 years or older at the time of any alleged felony offense …; *and* [¶] (2) The youth should be transferred to the jurisdiction of the criminal court based on an evaluation of all the criteria in section 707[, subdivision ](a)(3) as provided in that section; *and* [¶] (3) The youth is not

---

[8]    Pursuant to Senate Bill No. 545 (2023–2024 Reg. Sess.) (Senate Bill 545), effective January 1, 2024, consideration of these factors is now mandatory rather than discretionary. (*O.F., supra*, 119 Cal.App.5th at p. 160; *Miguel R., supra*, 100 Cal.App.5th at pp. 164–165.) Senate Bill 545 also added "the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery" as factors to consider under the first criterion. (§ 707, subd. (a)(3)(A)(ii); *Miguel R., supra*, at p. 165.)

amenable to rehabilitation while under the jurisdiction of the juvenile court.' ([Cal. Rules of Court, r]ule 5.770(b), italics added.) Rule 5.770(c) further requires a juvenile court ordering transfer to 'state on the record the basis for its decision, including how it weighed the evidence and identifying the specific factors on which the court relied to reach its decision.'" (*O.F., supra*, 119 Cal.App.5th at pp. 159–160.)

"[T]he ultimate finding that the juvenile court must make under section 707[, subdivision ](a)(3) concerns a global assessment of the minor's suitability to rehabilitation within the juvenile court system" (*Miguel R., supra*, 100 Cal.App.5th at p. 167; accord, *O.F. supra*, 119 Cal.App.5th at p. 162), "and the juvenile court's analysis of the section 707 criteria must be 'focused through the lens of amenability to rehabilitation'" (*O.F., supra*, at p. 162, quoting *S.S., supra*, 89 Cal.App.5th at p. 1288). "'The weight to be given [to] each of these [criteria] is within the court's discretion'" (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 186 (*Kevin P.*), quoting *D.W. v. Superior Court* (2019) 43 Cal.App.5th 109, 116; accord, *O.F., supra*, at p. 159), and "'[n]othing in section 707 indicates that the … court [is] required to give equal weight to each of the five criteria or that it would necessarily be an abuse of discretion to find that one criterion outweighed the other criteria'" (*Kevin P., supra*, at p. 186, fn. omitted, quoting *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1035 (*C.S.*); accord, *E.P., supra*, 89 Cal.App.5th at p. 417). However, to transfer a minor to criminal court, the juvenile court must ultimately find, "by clear and convincing evidence[,] that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court" (§ 707, subd. (a)(3); accord, *Miguel R., supra*, at p. 166; *In re J.S.* (2024) 105 Cal.App.5th 205, 212 (*J.S.*)), and the prosecution bears the burden of proof (*Miguel R., supra*, at p. 167; accord, *Kevin P., supra*, at p. 186). This "standard '"requires a finding of high probability."' [Citation.] The evidence must be '"""so clear as to leave no substantial doubt"; "sufficiently strong to command the unhesitating assent of every reasonable

10.

mind."""""" (*O.F., supra*, at p. 161, quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998, fn. 2; accord, *S.S., supra*, at p. 1286.)

## B.    Standard of Review

"We review the juvenile court's ruling on a transfer motion for abuse of discretion." (*Miguel R., supra*, 100 Cal.App.5th at p. 165.) "'The court's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. [Citation.] A decision based on insufficient evidence or the court's "'erroneous understanding of applicable law'" is subject to reversal. [Citation.]' (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 187.) But … we do not reweigh the evidence and we do not substitute our discretion for the discretion exercised by the trial court." (*J.S., supra*, 105 Cal.App.5th at p. 211.) "[W]e draw all reasonable inferences in support of the court's findings, not against them." (*Miguel R., supra*, at p. 169.) "We … are concerned only with whether ""'the circumstances reasonably justify the trier of fact's findings.'"" [Citation.] When evidence reasonably justifies the trier of fact's findings, "'the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"" (*Ibid.*)

## II.    Summary of Transfer Hearing

### A. Prosecution Witnesses

The prosecutor called four correctional officers employed at the jail to testify about four incidents involving M.R. Officer Molinar testified that on January 22, 2017, inmate-manufactured alcohol, or pruno, was discovered in a drawer during a security check of M.R.'s triple-bunk area. M.R. admitted the pruno was his and he received a rules violation.

Officer Prieto testified that on November 26, 2017, he smelled smoke and located a box of chess pieces that had been set on fire in the shower. The inmates used staples and electrical cords to create the spark that started the fire, and Officer Prieto explained that inmates use melted plastic to create tattoo ink. M.R. was in the area of the fire and

11.

identified as a participant, but it was unknown who started the fire. M.R. received a rules violation.

Officer Ataide testified that on September 4, 2019, staff discovered pruno in a drawer during a pod search. M.R. had some personal belongings in the same drawer and he received a rules violation, but he made no admissions and declined a disciplinary hearing.

Officer Garcia testified that on May 23, 2023, there was a fight in the common area of the pod involving three inmates, including M.R. M.R. had red hands and one of the other inmates also had physical signs of involvement on his hands and arms. Officer Garcia did not have any information concerning who started the fight or what caused it, but he testified that fights usually occur because of issues over disrespect.

## B. Additional Evidence

In addition to the four witnesses, the prosecutor submitted M.R.'s high school records, requested the juvenile court consider the jury trial evidence and noted a probation report had been prepared. (§ 707, subd. (a)(1).) M.R. did not put on any evidence and argued that the prosecution had not met its burden of proof.[9]

## C. Ruling

After taking the matter under submission, the juvenile court announced its ruling at a hearing and issued an 11-page written ruling. In the written ruling, the court stated it had considered the testimony of the four correctional officers, found them credible, and found M.R. engaged in fighting, possession of contraband, and arson while in jail custody. The court also stated it had presided over the jury trial and had considered the

---

[9] The record reflects that prior to the hearing, the defense anticipated calling an expert witness who evaluated M.R. and prepared a report. However, the defense subsequently elected not to put on any evidence.

two 2024 probation reports,[10] the prosecutor's transfer motion, M.R.'s opposition and motions in limine, the pleadings, and the parties' arguments. Based on its evaluation of the five statutory criteria, all of which the court found supported transferring M.R. to criminal court, the juvenile court found M.R. was not amenable to rehabilitation while under the juvenile court's jurisdiction and granted the transfer motion.

## III. Analysis

### A. M.R.'s Reliance on Dr. Blak's 2018 Testimony

Before turning to whether the juvenile court's findings are supported by substantial evidence, we address M.R.'s reliance in his briefing on Dr. Blak's testimony from his first transfer hearing, held in 2018 before the Honorable Gary L. Hoff. In response to the People's contention that the juvenile court did not consider this testimony in ruling on the second transfer motion, M.R. argues the court necessarily considered it because a transcript of Dr. Blak's testimony was attached to the transfer motion and the court stated it had considered the motion. We disagree with this characterization of the record.

Dr. Blak evaluated M.R. and prepared a report, and he testified at the first retrospective transfer hearing in 2018. When M.R. moved for a second transfer hearing in 2022 following his indictment by the grand jury, the prosecution opposed the motion and attached a transcript of Dr. Blak's testimony as exhibit No. A. Neither party asked the juvenile court to consider Dr. Blak's report or his testimony at the second transfer hearing held in 2024, and the record reflects that the court considered the prosecution's second transfer motion brought in 2023, not the prosecution's 2022 opposition to M.R.'s motion. There is no indication in the record that the court considered any of the evidence from the first transfer hearing and, therefore, in resolving this appeal, we do not consider

---

[10] A probation report was submitted by Deputy Probation Officer Oba-Spence in January 2024, and a transfer report, ordered under section 707, was submitted by Deputy Probation Officer Boyer in March 2024.

13.

that information.  (See *Miguel R., supra*, 100 Cal.App.5th at p. 161 [at second transfer hearing, parties stipulated to judicial notice of evidence from first transfer hearing].)  Notably, M.R. was not precluded from presenting expert testimony at the second hearing and the record indicates he contemplated doing so before electing not to present any evidence.  (See § 707, subd. (a)(3) [either party may submit relevant evidence].)

### B.  Sufficiency of Evidence Supporting Criteria Findings

#### 1.  Degree of Criminal Sophistication

The first criterion is "[t]he degree of criminal sophistication exhibited by the minor."  (§ 707, subd. (a)(3)(A)(i).)  As previously stated, in evaluating this criterion, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication."  (*Id.*, subd. (a)(3)(A)(ii).)

The court found no mitigating factors applied and concluded that M.R. "was well-aware of the diabolical nature of this horrendous crime."  The court observed M.R. "installed an application on his phone to provide for alternative, temporary phone numbers to secure telecommunications between the coconspirators," and "exchanged text messages with … Garcia about having to be picked up while they were both in the same car at or near the … [m]all."  The court also observed that M.R. laid in wait for the 13-year-old victim until she returned home from school, and he and the other coconspirators forced her into the trunk of the car, took her to an isolated location, tied her to a tree, and sexually assaulted her.

14.

M.R. challenges the court's finding that this criterion weighs in favor of transferring him to criminal court. He acknowledges "a significant level of criminal sophistication that came into play," but he claims the sophistication was mostly attributable to the conduct of Garcia and Carriedo, and he "was just a solider following orders …." He also claims the court failed to consider his "'maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense, [his] impetuosity or failure to appreciate risks and consequences of criminal behavior, the effect of familial, adult, or peer pressure on [his] actions, and the effect of [his] family and community environment and childhood trauma on [his] criminal sophistication.'" (§ 707, subd. (a)(3)(A)(ii).)

We conclude that substantial evidence supports the court's finding that this criterion weighs in favor of transferring M.R. to criminal court. M.R. relies heavily on Dr. Blak's testimony to support his argument, but, as discussed, Dr. Blak testified at the first transfer hearing in 2018, neither party requested the court consider that evidence at the second transfer hearing, and nothing in the record indicates the court considered that evidence. (See, e.g., *J.N., supra*, 23 Cal.App.5th at p. 716 [extensive evidence of the minor's upbringing presented].) Further, although M.R. reported he was taking a medication for sleep when he was interviewed by probation in 2023, he reported no mental health issues, and he denied any suicide attempts, mental health hospitalization, or childhood abuse. Finally, although the juvenile court must consider any relevant factors and the prosecution bears the burden of proving this criterion weighs in favor of transfer,

M.R. offered no evidence himself and did not otherwise raise any factual disputes as to this criterion.[11]

M.R. was three days shy of his 18th birthday when E.G. was kidnapped and sexually assaulted. M.R. did not mastermind the plot, but there is no indication he was coerced, he was a major participant in the crimes, and his conduct was not rash or impulsive. To the contrary, Carriedo testified that when the group talked about the plan to scare J.G. and his daughters the night before the crimes occurred, Garcia, M.R., and Kahlid were the three interested in participating; and M.R., along with Kahlid and Carriedo, downloaded the Burner app to their phones and tested it that evening, evidencing M.R.'s active and willing participation in the plot.[12] M.R. was also present for and directly involved in kidnapping E.G., which then devolved into torture, sexual assault with a foreign object, and threats to kill her. (Compare *J.S., supra*, 105 Cal.App.5th at p. 214 [escalating robbery spree culminating in a stabbing death deliberative rather than spontaneous or impulsive] & *Miguel R., supra*, 100 Cal.App.5th at p. 162 [preplanned robbery where the minor shot victim and then fled, changed appearance, and lied to police] with *S.S., supra*, 89 Cal.App.5th at p. 1290 [the minor who stabbed victim to death at a party was drunk and court disregarded evidence of

---

**11**     Addressed, *post*, the transfer report in this case is woefully inadequate. (§ 707, subd. (a)(1); see *O.F., supra*, 119 Cal.App.5th at pp. 144–148 [detailed transfer report prepared by probation officer, who also testified at the hearing]; *Miguel R., supra*, 100 Cal.App.5th at pp. 158–159 [transfer report included the minor's personal history, interviews, and the minor's behavior in custody ]; *C.S., supra*, 29 Cal.App.5th at pp. 1018–1019 [probation officer who prepared transfer report deemed an expert and testified].) A more robust transfer report that complies with section 707 is required from the probation department, and further development of the record on remand will likely result in additional evidence that is relevant to the statutory factors and to the court's re-evaluation of the five statutory criteria. The development of additional evidence may change the calculus for this criterion, but for purposes of resolving this appeal, we conclude the present record is sufficient to support the court's finding.

**12**     The evidence reflected the Burner app allows the user to conceal his or her real phone number by assigning a different phone number and facilitating communication through the app using that number.

16.

provocation] & *J.N., supra*, 23 Cal.App.5th at p. 716 [the minor not the shooter and the victim surprised the minor's group, was aggressive, and was shot when he struggled with the shooter over the gun].)  Under these circumstances, the juvenile court's finding that the degree of criminal sophistication exhibited by M.R. weighs in favor of transfer to criminal court is supported by substantial evidence.

### 2. Ability to Rehabilitate M.R. Prior to Expiration of Juvenile Court Jurisdiction

The second criterion is "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction."  (§ 707, subd. (a)(3)(B)(i).)  In evaluating this criterion, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature."  (*Id.*, subd. (a)(3)(B)(ii).)

The court found the opportunity to rehabilitate M.R. prior to the expiration of the juvenile court jurisdiction, if at all, was very limited given that he was 26 years old, he committed the crime just three days shy of his 18th birthday, and the nature of the offense was very violent.

M.R. concedes committing numerous rules violations while in custody, but he argues there was no evidence presented that he could not be rehabilitated within the two-year period the juvenile court would retain jurisdiction over him.  (§ 607, subd. (d).)  He points out that by the time of the second transfer hearing, he had been in custody for almost nine years and there was no evidence he was offered any rehabilitative services.

The juvenile court erred in finding that this criterion weighs in favor of transfer to criminal court.  "[T]he focus of the second criterion is whether there is enough time to rehabilitate the minor while the minor is still eligible to remain under juvenile court jurisdiction."  (*Miguel R., supra*, 100 Cal.App.5th at pp. 166–167, citing *J.N., supra*, 23 Cal.App.5th at p. 721 & *Kevin P., supra*, 57 Cal.App.5th at p. 200, fn. 13; accord, *O.F., supra*, 119 Cal.App.5th at p. 163.)  "[T]he prosecution accordingly 'bears the burden of producing evidence of insufficient time to rehabilitate the minor'" (*Miguel R., supra*, at

17.

p. 167, quoting *J.N.*, at p. 721) and when evaluating this criterion, "'the juvenile court shall give weight to … the minor's potential to grow and mature'" (*O.F., supra*, at p. 163, quoting § 707, subd. (a)(3)(B)(ii)).

The probation officer who prepared the transfer report did not testify, but she opined in the report that two years was not enough time to rehabilitate M.R. and his level of maturity exceeded that of the juvenile system. The juvenile court concluded, based on M.R.'s age and the violent nature of the crime, that the opportunity to rehabilitate M.R., if at all, is very limited. However, the court's finding that M.R. is incapable of rehabilitation before the expiration of jurisdiction must be supported by substantial evidence. (*O.F., supra*, 119 Cal.App.5th at p. 163, citing Cal. Rules of Court, rule 5.770(b)(2).) Courts have recognized that "proper analysis of this criterion generally requires 'expert testimony concerning the programs available, the duration of any of the programs, or whether attendance would rehabilitate [the minor] before termination of the juvenile court's jurisdiction.'" (*S.S., supra*, 89 Cal.App.5th at p. 1291, quoting *J.N., supra*, 23 Cal.App.5th at p. 722; accord, *O.F., supra*, at p. 164; compare *S.S., supra*, at p. 1287 [declining to accept probation officer's opinion in report as an expert opinion] with *C.S., supra*, 29 Cal.App.5th at pp. 1018, 1019 [probation officer who prepared transfer report and testified at hearing "deemed an expert in the evaluation of juvenile offenders and their fitness to remain in the juvenile justice system"].)

The prosecutor in this case "presented *no* evidence to demonstrate what [M.R.'s] rehabilitative needs were, much less why they could not be met within the juvenile court's jurisdiction." (*S.S., supra*, 89 Cal.App.5th at p. 1291, italics added; accord, *J.N., supra*, 23 Cal.App.5th at p. 722.) Further, the probation officer's conclusory opinion does not constitute substantial evidence because it was not supported by substantial evidence. (*J.N., supra*, at p. 722; accord, *S.S., supra*, at p. 1287.) In addition to the dearth of facts in the report, in stating that M.R. had matured out of the juvenile system, the probation officer failed to acknowledge section 875, subdivision (j), which provides,

18.

"A person who is 25 years of age or older shall not be committed to or detained in a county juvenile facility, unless the court finds that such a commitment or detention is in the best interest of that person and does not find that it would create a risk to the other youth in the juvenile facility. *A juvenile court exercising jurisdiction over a person who is 25 years of age or older may order commitment or detention of the person into an adult facility, including a jail or other facility established for the confinement of adults, or into a less restrictive program, as defined in subdivision (f), if the person is otherwise eligible for that program*." (Italics added.)

The People contend that M.R. has overlooked "overwhelming evidence" supporting the juvenile court's implied finding that two years was insufficient to rehabilitate him, and they point to his history of disciplinary violations while in custody. As an initial matter, the juvenile court was required to recite the basis for its decision, including its reasons, and it did not cite M.R.'s disciplinary conduct in custody in support of its finding on this criterion. (§ 707, subd. (a)(3).) Regardless, evidence of M.R.'s behavioral issues, while generally relevant to the inquiry, does not supplant the need for evidence of his specific rehabilitative needs and whether or not they can be met within two years. "[I]t is the 'potential' for minors to grow and mature, *notwithstanding their prior delinquent conduct*, that is relevant to the juvenile court's evaluation of the second criterion." (*O.F., supra*, 119 Cal.App.5th at pp. 164–165, italics added, quoting § 707, subd. (a)(3)(B)(ii).) Moreover, "while the circumstances of an offense are key to evaluating section 707's gravity criterion, they cannot be the sole basis for concluding under the rehabilitation criterion that the minor is unlikely to be rehabilitated before juvenile jurisdiction expires." (*Kevin P., supra*, 57 Cal.App.5th at p. 201.) As the court in *Kevin P.* explained, "We accept that a crime's circumstances may sometimes evince personal characteristics, such as a psychological disorder, that make a minor less amenable to rehabilitation. But without expert testimony to that effect, a court cannot reasonably infer that a minor has an amorphous 'dark side' hindering rehabilitation.

19.

Otherwise, the rehabilitation criterion would be meaningless in every case in which a juvenile committed a grave crime, a result for which we discern no legislative support." (*Ibid.*) The crime committed against E.G. was horrific, as was the crime in *Kevin P.*, but the circumstances underlying the crime "[do] not provide substantial evidence that the rehabilitation criterion favored [M.R.'s] transfer to criminal court." (*Ibid.*)

In sum, the transfer report in this case contained no information specific to rehabilitation and the prosecutor did not introduce any such evidence at the hearing. Thus, given the absence of *any* evidence on the nature of M.R.'s rehabilitative needs, what rehabilitative programs were available to him, and whether he would be amenable to rehabilitation through those programs within two years' jurisdictional timeframe, the prosecutor failed to meet his burden of proving this criterion and the juvenile court's finding that this criterion weighs in favor of transfer to criminal court is not supported by substantial evidence.

### 3. Previous Delinquent History

The third criterion is "[t]he minor's previous delinquent history." (§ 707, subd. (a)(3)(C)(i).) In evaluating this criterion, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the seriousness of the minor's previous delinquent history and the effect of the minor's family and community environment and childhood trauma on the minor's previous delinquent behavior." (*Id.*, subd. a)(3)(C)(ii).)

The court found that although M.R. did not have any known juvenile record, he had a lengthy, exhaustive history of defiance, disruption, and disrespectful behavior at school. The court found his behavior resulted in 60 disciplinary reports involving warnings, parental notifications, detentions, and summer school. He also accrued 88 unexcused absences and 23 suspensions. The court included a summary of 20 incidents.

M.R. argues that he had no delinquent history prior to the offenses committed against E.G. and the juvenile court abused its discretion by considering his school records

in assessing his history of delinquency.  Citing *D.C.*, the People disagree.  (*D.C., supra*, 71 Cal.App.5th at p. 455.)  In response, M.R. argues that *D.C.* is distinguishable because his school behavior is "remarkably different than" that of the minor in *D.C.*, who had a juvenile adjudication for serious felonies.  We are unpersuaded.

The minor in *D.C.* claimed that because "the 'previous delinquent history' criterion is limited to (1) conduct taking place before the alleged offense and (2) conduct resulting in a delinquency petition" (*D.C., supra*, 71 Cal.App.5th at p. 451), "the juvenile court's consideration of [his] 2017 burglary and the conduct documented in his school records was improper" (*ibid.*).  The appellate court analyzed section 707 and concluded that "the legislative history of the section 707 criteria indicates an overarching intent to grant judges broad discretion to consider all evidence relevant to this inherently case-by-case determination.  Narrowly construing the statutory language to prohibit the juvenile court from considering relevant information would be contrary to this legislative intent." (*D.C., supra*, at p. 455, fn. omitted.)  While there are differences in the histories of M.R. and the minor in *D.C.*, the appellate court rejected the proposition M.R. advances here, which is that it is error to consider "behavior documented in his school records."  (*Id.* at p. 456.)

M.R. did not have any known history of delinquency within the juvenile court system, but his records evidence a history of delinquent behavior in school and he engaged in multiple incidents of rule-breaking while in custody following his arrest in this case.  This information is relevant to the inquiry and may be considered by the court. (*D.C., supra*, 71 Cal.App.5th at p. 456; accord, *J.S., supra*, 105 Cal.App.5th at pp. 214–215.)

21.

We also conclude the evidence from M.R.'s school records is sufficient to support the court's finding that this criterion weighs in favor of transfer to criminal court.[13] M.R.'s school records were admitted into evidence and the court found he had "a long and exhaustive history … of defiance, disruption and being disrespectful during his academic career ….  In total, [M.R.] generated [60] discipline reports, resulting in numerous warnings, parental notifications, detentions, and summer school assignments. During his high school tenure, alone, [M.R.] accumulated [88] unexcused absences and [23] suspensions."  The court then listed the following specific incidents that occurred between 2011 and 2015:

> "**September 30, 2011:**  [M.R.] took another student's worksheet, erased the student's name and replaced it with his own.
>
> "**March 16, [2012]:**  [M.R. disrupted the class by making inappropriate comments.
>
> "**May 3, 2012:**  [M.R.] was defiant and disrespectful to two teachers and walked out of class.
>
> "**August 20, [2012]:**  [M.R.] used his cell phone to take pictures of a math aide.
>
> "**December 11, 2012:**  [M.R.] made disrespectful comments about the color of an instructional aide's skin.

---

[13]     At the hearing, the prosecutor put on evidence of four rules violations M.R. committed while in custody.  Two related to the possession of pruno and a third related some level of involvement with a group that set fire to a chess set.  The fourth involved a fight unaccompanied by any details, including whether it was a situation of mutual combat, a fight instigated by M.R., or a fight in which M.R. was victimized.  Notably, the juvenile court did not discuss these incidents in concluding M.R. has a history of delinquency.  We observe that the prosecutor included additional information in his transfer motion, including incidents that we find objectively more serious than the incidents described by correctional officers at the hearing. That information includes multiple incidents in which M.R. was an aggressor in physical assaults on other inmates, an incident in which razor blades were found in M.R.'s cell, and information indicating that despite placement in a disciplinary cell or on disciplinary status, M.R.'s misbehavior continued.  The prosecutor's summarization of this information in his motion is not evidence, however.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11 ["unsworn statements of counsel are not evidence"]; accord, *People v. Holliday* (2025) 116 Cal.App.5th 664, 674.) Nor was this information set forth in the probation officer's report.  (§ 707, subd. (a)(1).)

22.

"**February 4, 2013:** [M.R.] confronted another student.

"**February 15, 2013:** [M.R.] disrupted multiple classes. Staff removed [M.R.] from class. In another class, [M.R.] chewed gum and slept during instruction. In yet another class, [M.R.] directed profanity at a teacher and then walked out of class.

"**March 7, 2013:** [M.R.] was defiant and used inappropriate language. He also left class without permission.

"**May 21, 2013:** [M.R.] was suspended for repeatedly using a racial slur around staff and students.

"**October 1, 2013:** [M.R.] repeatedly made noise during class and refused to comply with instructions.

"**October 15, 2013:** [M.R.] talked during instruction, threatened to sue the teacher, and was continuously disruptive and incited other students to disobey.

"**November 14, 2013:** [M.R.] disrupted the class and interrupted the teacher by moaning.

"**November 19, 2013:** [M.R.] yelled during the administration of a test.

"**November 21, 2013:** [M.R.] refused to complete his school work, used profanity towards a teacher, incited other students to disobey, and then left the classroom without permission.

"**March 4, 2014:** [M.R.] shoved and elbowed another student.

"**March 27, 2014:** [M.R. shoved] and elbowed a female student out of her seat.

"**April 2, 2014:** [M.R.] threatened his teacher and pushed and harassed another student.

"**April 30, 2014:** [M.R.] was suspended for fighting.

"**October 27, 2014:** [M.R.] asked his teacher three separate times if she was on her period. When told to put away his cell phone, [M.R.] replied 'I don't give a fuck' and left class without permission.

"**February 3, 2015:** [M.R.] cussed his teacher, took items off the teacher's desk without permission, and incited other students to disobey."

M.R.'s school records reflect 69 documented disciplinary incidents between 2011 and 2015, which resulted in verbal counseling; phone calls to Garcia and her mother, with

23.

whom M.R. lived; and detention, Saturday school, and suspension. The records evidence a longstanding, ongoing pattern of defiance and disruption that continued despite disciplinary measures taken by the school and contact with Garcia and M.R.'s grandmother.

M.R. does not challenge this evidence except on the ground that it should not have been considered because it related to school. We have rejected that claim and conclude that substantial evidence supports the juvenile court's finding that M.R. has a prior history of delinquency that weighs in favor of transfer to criminal court.

### 4. Previous Attempts to Rehabilitate M.R.

The fourth criterion is the "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor." (§ 707, subd. (a)(3)(D)(i).) In evaluating this criterion, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the adequacy of the services previously provided to address the minor's needs." (*Id.*, subd. (a)(3)(D)(ii).)

The court found that given the absence of any juvenile record, there were no previous attempts by the juvenile court to rehabilitate him. However, because the school district made numerous, comprehensive attempts to rehabilitate him without success, the court found it "dubious, at best, that" rehabilitation attempts by a juvenile court would have been successful.

M.R. argues that given his lack of any prior history with the juvenile system, there is no evidence of previous attempts by the juvenile court to rehabilitate him. The probation officer's report is consistent with this information and he faults the juvenile court for considering the school district's efforts to correct his misbehavior. The People agree there is no evidence of prior attempts by the juvenile court to rehabilitate M.R., but they contend the court had the discretion to consider M.R.'s school disciplinary records in making a finding on this criterion. Alternatively, the People contend that even if the

court erred, any error was harmless given "the overwhelming evidence" supporting the other criteria.

As the juvenile court, the probation officer, and the parties recognized, there were no previous attempts by the juvenile court to rehabilitate M.R. However, the statute provides that the court shall give weight to any relevant factor and, as previously stated, the appellate court in *D.C.* found the legislative history of section 707 "indicates an overarching intent to grant judges broad discretion to consider *all* evidence relevant to this inherently case-by-case determination." (*D.C., supra*, 71 Cal.App.5th at p. 455, italics added.) We assume rehabilitative efforts outside the juvenile court system are relevant to the analysis, but M.R.'s school records reflect only disciplinary efforts. The records do not reflect any assessment of specific rehabilitative needs, they do not reflect any specific treatment or programming provided to address rehabilitative needs, there was no testimony addressing such needs, and the court did not make a contrary finding. Rather, based on M.R.'s history of behavioral issues in school, the court found it "dubious, at best, that [M.R.] would have been successful had the juvenile court attempted to rehabilitate him."

The finding that this criterion weighs in favor of transfer to criminal court must be supported by substantial evidence and, here, there is *no* evidence of prior efforts to rehabilitate M.R. Speculation based on M.R.'s history of disruptive and defiant behavior does not suffice. Therefore, the court erred in finding this criterion weighs in favor of transfer to criminal court.

### 5. Circumstances and Gravity of Offense

Finally, the fifth criterion is "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor." (§ 707, subd. (a)(3)(E)(i).) In evaluating this criteria, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused

25.

by the person, and the person's mental and emotional development." (*Id.*, subd. (a)(3)(E)(ii).) Further, "the court shall consider evidence offered that indicates that the person against whom the minor is accused of committing an offense trafficked, sexually abused, or sexually battered the minor." (*Id.*, subd. (a)(3)(E)(iii).)

This case does not involve any evidence that the victim trafficked, abused, or battered M.R., and the court found there was "a plethora of evidence that the [crime] was extremely violent [and] well planned," and that M.R. was an active participant in both "the planning and execution of the crime." The court noted that M.R. "and his coconspirators planned [and] executed the kidnapping of a thirteen-year-old [girl]," and the crime involved lying in wait outside her home. When she arrived home from school, one of the individuals, who was masked, covered her eyes and mouth with his hands and walked her to the side of the house where another masked individual, whom she recognized as M.R. by his voice, told her to get into the trunk. The victim was then driven to an isolated location approximately 45 minutes away, tied to a tree with rope, stripped of her clothing, and assaulted with the handle of a toilet plunger until she vomited. The victim was threatened she would be shot if she did not stop screaming and she was threatened with death if she told anyone what happened. She was then left tied to the tree without any clothing.

M.R. concedes the crime caused the victim severe harm, but he argues the juvenile court failed to either consider or appreciate the existence of mitigating evidence. M.R. again relies on Dr. Blak's testimony for support, but, as we have explained, that evidence was not before the court during the second transfer hearing. Moreover, "the existence of contrary evidence does not show that the trial court's findings were not supported by substantial evidence. In conducting substantial evidence review, we draw all reasonable inferences in support of the court's findings, not against them. [Citation.] We consequently are concerned only with whether ""the circumstances reasonably justify the trier of fact's findings."" [Citation.] When evidence reasonably justifies the trier of

26.

fact's findings, "'the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"" (*Miguel R., supra*, 100 Cal.App.5th at p. 169.)

The circumstances and gravity of the offense committed against 13-year old E.G. are shocking. M.R. was an active participant in the crime. He engaged with his coconspirators in planning the crime, and he downloaded the Burner app to mask his messages. He also prepared for the crime in advance by dressing in black and masking himself, and, along with three other coconspirators, he was directly involved in kidnapping E.G., transporting her into the mountains in the trunk of a car, tying her to a tree, stripping her naked, repeatedly sexually assaulting her with the handle of a toilet plunger, and threatening to kill her. The crime was heinous, and the juvenile court's finding that the circumstances and gravity of the offenses weigh in favor of transferring M.R. to criminal court is, without question, supported by substantial evidence.

**C.     Ultimate Finding M.R. Not Amenable to Rehabilitation**

"The amended version of section 707 requires the juvenile court to consider each of the five statutory criteria and *how* those criteria affect [the] minor's amenability to rehabilitation while under the jurisdiction of the juvenile court. (§ 707, subd. (a)(3).) This is not a simple task for the court or for the parties, who must introduce evidence relevant to this complicated determination, likely including expert testimony. This difficulty reflects the Legislature's caution: 'The transfer of a juvenile to adult court is an extremely serious decision with a lifetime of consequences, and one which should not be taken lightly.' (Assem. Off. of Chief Clerk, 3d reading analysis of Assem. Bill No. 2361 (2021–2022 Reg. Sess.) as amended Mar. 31, 2022, p. 1.) After the amenability hearing, the juvenile court must 'recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding.' (§ 707, subd. (a)(3).) This means the court should 'explicitly "articulate its evaluative process" by detailing "how it weighed the evidence" and by "identify[ing] the specific facts which

27.

persuaded the court" to reach its decision' whether to transfer [the] minor to a court of criminal jurisdiction. (*C.S. v. Superior Court, supra*, 29 Cal.App.5th at pp. 1034–1035.) The court's explanation, like its analysis, should focus on [the] minor's amenability to rehabilitation." (*S.S., supra*, 89 Cal.App.5th at p. 1294, italics added.)

As stated, "the ultimate finding that the juvenile court must make under section 707[, subdivision ](a)(3) concerns a global assessment of the minor's suitability to rehabilitation within the juvenile court system" (*Miguel R., supra*, 100 Cal.App.5th at p. 167), and "[t]he prosecution bears the burden of proving by clear and convincing evidence that the minor is 'not amenable to rehabilitation while under the jurisdiction of the juvenile court'" (*ibid.*, quoting § 707, subd. (a)(3)). We concluded that substantial evidence supports the juvenile court's findings that the degree of criminal sophistication exhibited by M.R., his previous delinquent history as evidenced by school records, and the circumstances and gravity of the offense weigh in favor of transfer to criminal court. However, the prosecution failed to prove the criterion relating to whether M.R. can be rehabilitated within the two-year period the juvenile court may exercise jurisdiction over him given his age and the success of previous attempts by the juvenile court to rehabilitate M.R. support transfer to criminal court and, therefore, the court's findings are not supported by substantial evidence. These deficiencies are fatal to the court's ultimate conclusion that M.R. is not amenable to rehabilitation while under the jurisdiction of the juvenile court infirm.

First, while "[t]he weight to be given each of the five criteria is within the juvenile court's discretion" (*O.F., supra*, 119 Cal.App.5th at p. 159, citing *D.C., supra*, 71 Cal.App.5th at p. 445), the weight the court afforded each criteria is not apparent from the record. Further, the record does not indicate that the court viewed each criterion, and its global assessment, through the lens of rehabilitation, as is required under the law. Indeed, the evidence in this case does not speak, at all, to several of the issues *critical* to a determination that a minor is not amenable to rehabilitation. This precludes a finding of

28.

harmless error under any standard and necessitates we vacate the order granting the prosecution's transfer motion. (See *People v. Dain* (2025) 18 Cal.5th 246, 261 [where the court misapprehends the scope of its discretion, remand is required "unless the record '"clearly indicate[s]"'" that the correction would make no difference—that is, that 'the trial court would have reached the same conclusion "even if it had been aware"' of the scope of its discretion"]; *People v. Salazar* (2023) 15 Cal.5th 416, 425 [where the substantive law has changed, "*Watson*[14] does not properly take into consideration the 'more speculative inquiry' of what choice the court is likely to make in the first instance"]; *Miguel R., supra*, 100 Cal.App.5th at pp. 170–171 [remand not required following enactment of Sen. Bill 545 because "it is not reasonably probable that the juvenile court would have reached a result more favorable to [the minor] if it had applied the current version of section 707"]; *S.S., supra*, 89 Cal.App.5th at p. 1289 ["[t]aking into account the heightened standard of proof and viewing the juvenile court's analysis of the five-section 707 criteria through the lens of amenability to rehabilitation, we conclude it is reasonably probable the juvenile court would not order [the] minor's transfer under the current version of section 707"]; *C.S., supra*, 29 Cal.App.5th at pp. 1036–1037 [juvenile court's failure to provide adequate statement of reasons for transfer decision not harmless beyond a reasonable doubt].)

The crime committed against E.G. was vicious and resulted from a cold, calculated plan hatched in advance and in which M.R. actively participated. Assuming a spectrum on which a drunken knife fight at a party or a shooting that resulted from a struggle over a weapon, initiated by the victim, fall at one end (*S.S., supra*, 89 Cal.App.5th at p. 1290; *J.N., supra*, 23 Cal.App.5th at pp. 711–712), this crime falls on the other. However, neither the horrifying nature of the crime nor its sophistication suffices to support a transfer order where, as here, the inquiry and findings were not

---

**14**      *People v. Watson* (1956) 46 Cal.2d 818, 836.

viewed through the lens of rehabilitation and the prosecution failed to address the issues of M.R.'s rehabilitative needs, the availability of rehabilitative programs or services, and why those programs or services would or would not serve to rehabilitate M.R. within a two-year period. The juvenile court is entitled to draw reasonable inferences, but those inferences must be based on evidence and, in this case, neither the prosecution nor the probation officer supplied evidence sufficient to support the court's finding on the second and fourth criterion (§ 707, subd. (a)(3)(B), D)), or its ultimate finding that M.R. "is not amenable to rehabilitation while under the jurisdiction of the juvenile court" (*id.*, subd. (a)(3)).

However, we disagree with M.R. that he is entitled to remand with directions to enter an order denying the prosecution's transfer motion. "'All exercises of discretion must be guided by applicable legal principles .… [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]' (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.) The 'discretion must be exercised in accordance and within the framework prescribed by the Legislature.'" (*Bruce M. v. Superior Court* (1969) 270 Cal.App.2d 566, 573.)" (*J.N., supra*, 23 Cal.App.5th at pp. 714–715.)

This case does not involve a retroactive change in the law that occurred after the transfer hearing, and the juvenile court spoke to the applicable legal standard when it ruled. Nevertheless, the court's ruling expressly reflects a misapprehension of the scope of its discretion under section 707 as amended by Assembly Bill 2361 and Senate Bill 545, and a misapprehension of the lens through which it must now view each criterion and the ultimate finding of amenability to rehabilitation. Therefore, we shall

vacate the juvenile court's order granting the prosecution's transfer motion and remand the matter.

Given the need for further proceedings on remand, we emphasize that when a transfer motion is filed, "the juvenile court shall order the probation officer to submit a report on the behavioral patterns and social history of the minor." (§ 707, subd. (a)(1).) The transfer report prepared in this case fell well short of what the statute contemplates and the juvenile court erred in not requiring the probation department to file a compliant report. The March 2024 transfer report states it is supplemental to the report prepared for the first transfer hearing in 2018, but there is no indication in the record that the juvenile court considered the 2018 report. Further, despite the passage of approximately seven years between the first and second transfer hearing reports and changes to the law, the second report failed to include new information relevant to the court's evaluation under the law as it now stands, including the provision that "[a] juvenile court exercising jurisdiction over a person who is 25 years of age or older may order commitment or detention of the person into an adult facility, including a jail or other facility established for the confinement of adults, or into a less restrictive program, as defined in [section 875,] subdivision (f), if the person is otherwise eligible for that program." (§ 875, subd. (j).) The transfer report also neglected to summarize M.R.'s behavioral patterns over the nine years he was in custody or over the almost seven-year period that postdated the first transfer report. Nor did the four witnesses who testified speak to anything other than the four specific instances of misbehavior committed by M.R., one of which may or may not have involved self-defense.

There are difficulties inherent in providing an adult with a retrospective juvenile transfer hearing (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 313), but it is a matter that must be approached with the utmost seriousness (*S.S., supra*, 89 Cal.App.5th at p. 1294). We need not and do not endeavor to define the universe of evidence a prosecutor may or must rely on to support a transfer motion, but numerous appellate

31.

courts have provided guidance on the matter.  (E.g., *O.F., supra*, 119 Cal.App.5th 133; *Miguel R., supra*, 100 Cal.App.5th 152; *S.S., supra*, 89 Cal.App.5th 1277*; D.C., supra*, 71 Cal.App.5th 441; *Kevin P., supra*, 57 Cal.App.5th 173; *C.S., supra*, 29 Cal.App.5th 1009; *J.N., supra*, 23 Cal.App.5th 706.)  At a minimum, on remand, the juvenile court shall require the probation department to submit a report that comports with the law, as stated.  (§ 707, subd. (a)(1).)  Further, given that more than 28 months have passed since the second transfer report was prepared and more than 20 months have passed since the transfer hearing, the court shall provide the parties with the opportunity to submit any relevant evidence that postdates the transfer report and the transfer hearing.  (§ 707, subd. (a)(3).)  We express no view on what else the parties may submit or the court may consider, as those matters are best suited for resolution in the juvenile court in the first instance, after the parties have an opportunity to be heard.

## DISPOSITION

The juvenile court's order granting the prosecution's motion to transfer M.R. to criminal court is vacated.  This matter is remanded to the juvenile court for proceedings consistent with this opinion, to include an updated transfer report that comports with section 707 and any relevant posttransfer hearing evidence.  (*Id.*, subd. (a)(1), (3).)

MEEHAN, J.

WE CONCUR:


HILL, P. J.


DETJEN, J.

32.